IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOEL WINNIG, Candidate for
Supreme Court Justice, Supreme
Court of Wisconsin,

                          Plaintiff,                       ORDER

   v.

                                                     10-cv-362-slc[1]

KEITH L. SELLEN, in his official
capacity as the Director of the Office
of Lawyer Regulation, an operating
subsidiary of the Supreme Court of
Wisconsin,

                          Defendant.

---

Plaintiff Joel Winnig filed this action under 42 U.S.C. § 1983 alleging that his free speech and association rights under the First and Fourteenth Amendments of the Constitution, as well as those parallel rights provided for under the Wisconsin Constitution, are being violated by Wisconsin Supreme Court Rule 60.06(4), which prohibits both judges and candidates for judicial office from personally soliciting or accepting campaign contributions. Specifically, Winnig wants to solicit and accept personally campaign contributions from potential voters in hopes of qualifying to receive the public financing benefit in his campaign for a position as a justice on the Wisconsin Supreme Court in the upcoming April 2011 election. Winnig alleges that he will not be able to qualify for public financing under Wis. Stat. § 11.502(2) unless SCR 60.06(4) is found to be unconstitutional

---

[1] Because the parties' decisions on whether to consent to Magistrate Judge Crocker's jurisdiction have not yet been filed, District Judge Conley will preside over this case until those decisions are filed.

as applied to him. Winnig contends that he is entitled to a temporary restraining order (dkt. #10) and a preliminary injunction (dkt. #9) preventing SCR 60.06(4) from applying to him, because (1) the period in which he can qualify for public financing begins on July 1, 2010, and (2) he plans to begin campaigning around the state on July 8, 2010. For the reasons given below, his motion for a TRO will be denied.

The core difference between a temporary restraining order and a preliminary injunction is that the former may be issued "before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Regardless of which type of early injunctive relief is sought, the party seeking such relief "must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

Less than a month ago, in *Siefert v. Alexander*, No. 09-1713, 2010 WL 2346659, at *14 (7th Cir. June 14, 2010), the Court of Appeals for the Seventh Circuit determined that the direct solicitation ban found under SCR 60.06(4) was constitutional. The appellate court's decision in *Siefert*, which is controlling on this court, effectively precludes any possibility of success for Winnig. While Winnig argues that his case is distinguishable from the Seventh Circuit's decision in *Siefert*, he presents no facts or law which support a different outcome here.

First, Winnig notes that the plaintiff in *Siefert* was both a sitting judge and a judicial

candidate, whereas Winnig is merely a judicial candidate. But this difference does not change the applicability of *Siefert* to Winnig's claim for relief. While the Seventh Circuit noted that it was not addressing "the issue of regulations for judicial candidates who are not judges" in the context of SCR 60.06(2)(b)(4), the court did not draw the same distinction with respect to its decision about the constitutionality of 60.06(4). *Siefert*, at *11. On the contrary, the Seventh Circuit found that 60.06(4) did not violate the First Amendment's protection of free speech "[b]ecause the ban on direct solicitation of contributions by judicial *candidates* prevents corruption and preserves impartiality without impairing more speech than is necessary[.]" *Siefert*, at *14 (emphasis added). Under *Siefert*, 60.06(4) is constitutional as applied to judicial candidates, like Winnig, even if they are not sitting judges.

Second, Winnig argues that the concern of corruption raised by direct solicitation, which underpins the constitutionality determination in *Siefert*, does not apply to him, because in attempting to obtain public financing he will only request contributions ranging from $5 to $100. In *Siefert*, the Seventh Circuit said nothing about the amount of contributions being determinative of the constitutionality of 60.06(4). Instead, the appellate court explained:

> A direct solicitation closely links the quid -- avoiding the judge's future disfavor -- to the quo -- the contribution. We do not mean to suggest that judges who directly solicit contributions are necessarily behaving inappropriately, but the *appearance* of and potential for impropriety is significantly greater when the judges directly solicit contributions than when they raise money by other means.

*Id.* at *13 (emphasis added). While the solicitation or giving of very large contributions may escalate the impropriety, it is the personal solicitation by the judicial candidate that creates

3

the appearance of corruption and partiality. *Id.* at *14 ("the personal solicitation itself presents the greatest danger to impartiality and its appearance"). If there is a more nuanced argument for why *Siefert* does not control Winnig's case, he has yet to present it.

On the current record before the court, therefore, Winnig has failed to show that he has even a reasonable likelihood of success on the merits of his case. This failure alone is sufficient grounds on which to deny his motion.

In addition to his failure to demonstrate a reasonable likelihood of success, however, Winnig has also failed to establish that he will suffer an irreparable harm or that he has no adequate remedy at law. As Winnig himself alleges (Am. Compl., dkt. #6, ¶21), the direct solicitation ban does not prevent him from raising the necessary funds by using other methods, such as a campaign committee. It bans only *direct* solicitation by Winnig. That Winnig acknowledges having other permissible methods in which to obtain the money necessary to qualify for public funding of his campaign, undercuts his argument that he would suffer any irreparable harm. For example, Winnig is free under current Wisconsin election laws to hire someone to run a finance committee that solicits funds from individuals and to serve on that committee himself, so long as he does not participate in any direct solicitation. *Siefert*, at *13-14.

Finally, even if Winnig had a reasonable likelihood of success on the merits and risked irreparable harm, the court would not be inclined to grant his request for a TRO in light of the harm it may have on the public interest. As the Seventh Circuit noted in *Siefert*, the direct solicitation ban serves "the state's interest in preserving impartiality and preventing

4

corruption[.]" *Id.* at *14. The court has not been persuaded that Winnig's need for an immediate injunction outweighs the potential harm that would arise from enjoining the enforcement of a rule that serves such an important state interest -- a public interest so important the Seventh Circuit found it sufficient to support a governmental limit on free speech.

While Winnig has wholly failed to carry his burden in obtaining a temporary restraining order, his motion for a preliminary injunction still pends. If he wishes to continue to pursue that motion, he needs to follow this court's preliminary injunction procedures, which are attached to this order and can be found on the court's website. Under these procedures, Winnig need not file a new preliminary injunction motion, but he does need to submit the supporting materials required by the court's procedures, such as findings of fact and a brief, by July 19, 2010. Failure submit the required submissions by July 19th will result in denial of the preliminary injunction motion. If the additional supporting materials are timely submitted, defendant will have until August 9, 2010, in which to file his response. If the court finds that an evidentiary hearing on Winnig's motion is necessary, the parties will be notified. Otherwise, the preliminary injunction motion will be decided on written submissions.

ORDER

IT IS ORDERED that plaintiff Joel Winnig's motion for a temporary restraining order (dkt. #10) is DENIED.

Entered this 7th day of July, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge